IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

STEVEN J. ENGEL,            )
                            )
        Plaintiff,          )
                            )
v.                          )    NO. 3:13-cv-1427
                            )    JUDGE CAMPBELL
COMCAST CABLE               )
COMMUNICATIONS MANAGEMENT,  )
LLC,                        )
                            )
        Defendant.          )

**MEMORANDUM OPINION**

Plaintiff's Complaint alleges discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.A. § 623. Docket No. 1. Now before the Court is Defendant's motion for summary judgment. Docket No. 31. For the reasons set forth herein, the Court will grant Defendant's motion.

**I.    FACTUAL BACKGROUND**

The facts set forth herein are undisputed for purposes of the defendant's motion, unless otherwise indicated. Plaintiff was hired by Comcast in 2007 at the age of 52 to work in the Nashville call center handling calls related to billing and repair. He later transferred to the sales department and was listed as a senior sales specialist. He remains employed by Comcast. In July 2011, Jason Dillon, who was Comcast's manager of sales, offered Plaintiff the opportunity to work as a "Point of Contact" ("POC") for a predetermined period of approximately ninety days. Plaintiff alleges that Mr. Dillon did not actually want to offer him this opportunity but instead was urged to do so by the human resources director. Plaintiff was 57 years old at the time he was given this opportunity. The POC assignment is not an actual position at Comcast. It is a temporary position intended to give an

individual the opportunity to demonstrate and develop leadership skills and to give Comcast's management an opportunity to assess the potential for an individual to be promoted to a supervisory position. Plaintiff did not receive an increase in pay when he was placed in the POC position.

While in the Point of Contact position, Plaintiff participated in a practice exercise in which a group of assembled sales associates were asked to take turns standing up and explaining the benefits of the "SalesPro" method to the group. When Plaintiff made his presentation, one of the supervisors in the room became disruptive for the purpose of seeing how Plaintiff would react to the situation. Mr. Dillon later told Plaintiff that he thought Plaintiff had become overly agitated and clearly angry in his response to the disruption and that his approach was inappropriate. In addition to having concerns about Plaintiff's handling of the disruption, Comcast staff also felt that Plaintiff failed to take responsibility for handling the incident poorly. As an example, Comcast quotes from an email Plaintiff sent to Jason Dillon in which Plaintiff gave reasons for believing his handling of the disruption was acceptable and stated that "[a]fter reflecting on the incident, I can see how you might have got [sic] the wrong impression." Comcast also cites the following from Plaintiff's deposition to demonstrate that Plaintiff does not respond appropriately to constructive criticism:

> I was trying to give [Mr. Dillon] the benefit of the doubt that, you know, if he is this naive that he could have thought that this was real behavior. I was trying to give him an out, you know, so if he was just embarrassed that he interpreted it that way, he, you know, that maybe he just thought because I have rosacea that maybe I was angry. I don't know. I was trying to give him an escape.

Docket No. 31-1 at 37 (Engle Dep.).

During his time in the Point of Contact position, Plaintiff also faced in incident in which he believed he smelled alcohol on the breath of a sales associate who was under his supervision. Comcast states that he did not immediately notify members of management or continue to observe the employee to confirm his suspicions. Plaintiff disputes this, stating that he did look for a

supervisor but was unable to locate one and that he observed the employee and believed he was not impaired. Several days later, while having a meeting with a different sales associate under his supervision, Plaintiff asked that employee if she had ever smelled alcohol on anyone's breath, and she named the employee that Plaintiff had noticed several days before smelling like alcohol. After this conversation, Plaintiff notified management in an email sent to his former supervisor, current supervisor, and human resources. Mark Fleming, Comcast's Human Resource Manager in the call center, felt that Plaintiff failed to report the observation of the individual who smelled like alcohol in a timely manner and that Plaintiff's discussion of the matter with another sales associate was inappropriate. Docket No. 34 at 3 (Fleming Decl.).

Upon the completion of his temporary placement in the Point of Contact position, Plaintiff returned to his prior position as a sales associate, with no change in his pay. Mr. Dillon did not believe that Plaintiff had performed well in the supervisory position or that he would be a good candidate to be promoted to a supervisor. Mr. Fleming also believed that Plaintiff had not been successful in the Point of Contact position. Mr. Fleming was most troubled "was [Plaintiff's] complete inability to admit that he made a mistake, that he could have handled a matter in a better way or that he could learn from the mistake." *Id.* Mr. Fleming felt that Plaintiff's "lack of basic people skills and his inability to take ownership for his mistakes... disqualifies him from a supervisory role at Comcast." *Id.*

Plaintiff expected to move from the Point of Contact position into a supervisory role. After Plaintiff was returned to his sales position, he sent an email to Jason Dillon stating in part, "I am still baffled by this move as my performance especially under the circumstances was above par." Docket No. 31-1 at 55. Plaintiff's email to Mr. Dillon went on to state his belief that he had fewer "tools" to use in his supervisory role than what Comcast had provided to others in the Point of Contact

3

position. *Id.* at 55–56. Mr. Dillon responded to Plaintiff that "the process was followed identically for you as it was for POC's in role [sic] before you. The difference may lie in the others using their peers as a resource, etc." *Id.* at 55.

After Plaintiff was returned to his former job position, he made an internal complaint of discrimination, which was assigned to a trained investigator from outside of his area to conduct an investigation. The investigator interviewed Mr. Dillon and Mr. Fleming. Mr. Fleming provided the investigator with background information and copies of emails that demonstrated his concerns with Plaintiff's performance in the supervisory role and his failure to accept responsibility and instruction for poorly handled situations. After completing the investigation, the investigator concluded that there was no basis for Plaintiff's allegation of discrimination. Plaintiff concedes that he has never heard any management-level employee make a negative statement about his age.

In addition to alleging that Comcast demoted him and failed to promote him on the basis of his age, Plaintiff also alleges that Comcast retaliated against him after he filed the discrimination complaint by causing him to receive calls from less affluent areas or ones that were related to repair requests rather than to sales which diminished his opportunity to makes sales and, accordingly, reduced his commission. Plaintiff does not dispute that when a customer calls into the call center, the automated response system prompts the customer to select a reason for the call, such as sales, billing or repair. Based on the prompt entered by the customer, the call is routed into the call queue and then routed to the next available associate with that skill set in the order in which it was received. Each Comcast employee's skill set is determined by the role into which he or she was hired, such as sales, billing, or repair, which is coded into the Comcast computer system. When Plaintiff complained about the "quality of calls" he was getting, a Comcast employee checked to ensure that his skill area was properly entered in the automated system and then communicated to

Plaintiff that his skill set was set the same as the rest of the sales team and that Comcast could not change the buttons customers press when they call.

In December 2013, Plaintiff filed the Complaint in this matter. Defendant has moved for summary judgment, asserting that it is entitled to judgment as a matter of law in its favor on Plaintiff's ADEA discrimination and retaliation claims.

## II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment requires that the Court view the "'inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position[, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247–49).

## III. LEGAL ANALYSIS

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a *prima facie* claim of employment discrimination under the ADEA based upon direct or indirect, circumstantial evidence. *Provenzano v. LCI Holdings, Inc*., 663 F.3d 806, 811 (6th Cir. 2011). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citation and internal quotation marks omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* However, regardless of the type of evidence presented, the burden of persuasion remains on ADEA plaintiffs to demonstrate "that age was the 'but-for' cause of their employer's adverse action." *Provenzano*., 663 F.3d at 811 (quoting *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 177 (2009)).

Plaintiff relies entirely on circumstantial evidence. Where only indirect evidence of discrimination is available, the claims are analyzed using the three-step framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and modified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998). First, the employee carries the initial burden of establishing a *prima facie* case of age discrimination. If the employee meets this burden by presenting facts which, if true, would prove each of the elements of the *prima facie* case, the second step requires the employer to respond by articulating some legitimate, nondiscriminatory reason for the adverse employment action at issue. *McDonnell Douglas*, 411 U.S. at 802. Third, assuming the employer

meets its burden, then the burden of production shifts back to the employee to rebut this proffered reason by proving that it was pretext designed to mask discrimination. *Id.* at 804.

### A.     Discrimination/Demotion

In the first stage of the *McDonnell Douglas* analysis, Plaintiff must establish a *prima facie* case of discrimination by showing: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

Plaintiff is over 40 years of age, so is a member of a protected group. Assuming without deciding that Plaintiff is qualified for the job at issue, the Court turns to the question of whether Plaintiff suffered an adverse employment action. There is no genuine dispute that the Point of Contact position was, by design, a temporary position designed to allow management an opportunity to assess whether an employee would be capable of handling supervisory responsibilities. Plaintiff himself concedes that the position had a predetermined duration of ninety days, Docket No. 31-1 at 15–16 (Pl.'s Dep.) and that he did not receive a pay increase in that role. Upon return to his prior permanent position, the rate of pay and the work responsibilities remained the same as they had previously been. The Court finds that Comcast's decision to return Plaintiff to his prior position did not constitute an adverse employment action. *See Escamilla v. Kirk,* No. 5:05CV164, 2007 WL 689860, at *3–5 (W.D. Mich. Mar. 2, 2007) (finding no adverse employment action when employee was returned from temporary position with higher pay to former position with lower pay and citing cases addressing whether return from temporary to permanent position constitutes an adverse employment action).

7

Furthermore, the circumstances surrounding Comcast's decision to return Plaintiff to his prior position do not support an inference of discrimination. In addition to the fact that the Point of Contact position was designed to be temporary, Plaintiff was 57 years old when Comcast placed him in this temporary position and was the same age when he was returned to his former position. This fact does not support an inference of discrimination.

Additionally, Comcast's decision to return Plaintiff to his prior position enjoys the "same actor" inference, meaning that "where the same person hires the employee and fires him within a short period of time, especially where the employee's class has not changed, there is a strong contrary inference of discriminatory intent." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 801 (6th Cir. 2007) (citing *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463–64 (6th Cir.1995)). Mr. Dillon selected Plaintiff for the temporary position when Plaintiff was 57 and then returned him to his prior duties approximately ninety days later when Plaintiff was still the same age. Although Plaintiff protests that the advocacy by someone in the HR department led to Mr. Dillon's allegedly reluctant decision to move him into the temporary position, Plaintiff does not dispute that Mr. Dillon was the individual with the authority to make that decision and that Mr. Dillon did, in fact, make the decision to offer Plaintiff that opportunity. Mr. Dillon's decision to return him to his prior position, a decision that was, in actuality, made before Mr. Dillon even placed him in the temporary position as the position was never intended to be a permanent move, does enjoy the same actor inference. Thus, Plaintiff has not met his burden to demonstrate that Comcast's returning him to his prior position supports an inference of discrimination and accordingly has not established a *prima facie* case. For reasons articulated below, even if Plaintiff were able to establish a *prima facie* case for his alleged demotion, he would be unable to meet his burden to show that Comcast's proffered legitimate, non-discriminatory reasons for terminating him were pretextual.

**B.     Failure to Promote**

To establish a *prima facie* case of discrimination based on an employer's failure to promote, an employee must show: (1) he is a member of the protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir.2005) (citing *Nguyen v. City of Cleveland,* 229 F.3d 559, 562–63 (6th Cir.2000)).

Comcast argues that Plaintiff cannot establish a *prima facie* case of failure to promote due to age discrimination because he was not qualified for a promotion to supervisor based on the fact the management team did not think he had the proper skills and temperament to be promoted to supervisor. However, the Sixth Circuit has "repeatedly cautioned district courts against 'considering the employer's alleged nondiscriminatory reason when analyzing the *prima facie* case.'" *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir.2003) (en banc)) (internal brackets omitted). That is, courts must not "conflat[e] . . . the qualification prong with the [employer's] proffered reason for terminating" an employee. *Id.* To consider the employer's proffered reason for termination at the *prima facie* stage would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the alleged nondiscriminatory reason was actually a pretext for discrimination. *Wexler*, 317 F.3d at 574. When assessing whether a plaintiff is qualified at the *prima facie* stage, a court must examine the plaintiff's evidence *independent* of the nondiscriminatory reason produced by the defense as its reason for the adverse employment action. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir. 2003). "[A] plaintiff can satisfy the qualification

prong by showing that she performed at a level that generally met her employer's objective minimum qualifications." *Loyd*, 766 F.3d at 590 (quoting *Wexler*, 317 F.3d at 575–76).

Assuming that Plaintiff can show the first three prongs, he has not offered facts sufficient to support a finding that "employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." He presents only vague allegations that although people over the age of 40 had been hired directly into supervisory or management positions, he was not aware of anyone over the age of 40 being promoted from within. Plaintiff's concession that Comcast hired individuals over 40 years of age directly into management positions undercuts his position that Comcast discriminated against him on the basis of his age. More fundamentally, as Comcast's failure to promote him after his temporary Point of Contact placement, Plaintiff has simply failed to meet his burden of production on the fourth element of the *prima facie* case by failing to provide any specific facts of individuals who were promoted including details like individuals' names, ages, qualifications, and positions to which they were promoted.

As to the "ten or eleven other positions" that Plaintiff alleges he applied for, he provides absolutely no evidence necessary to establish a *prima facie* case other than showing that he was over the age of 40. For example, he provides no evidence of the positions he applied for, whether the positions were vacant at the time of his application, the dates he applied for the positions, his qualifications for each position, whom Comcast hired for the position, how he is similarly situated to the individual hired, and whether the individual was under the age of 40 at the time Comcast hired or promoted them. Again, he has failed to meet his burden of production to establish a *prima facie* case of age discrimination by failure to promote.

Even if Plaintiff could make a *prima facie* showing, Comcast has met its burden of providing legitimate, non-discriminatory reasons for terminating him, namely that it believed his people skills were poor, that he had shown poor judgment in handling the situation of a subordinate coming to work with alcohol on his breath, and that he responded poorly to constructive criticism. To raise a genuine issue of fact as to pretext and defeat a summary judgment motion, Plaintiff must show one of the following: (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the action, or (3) that the proffered reason was insufficient to motivate the action. *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 584, 589 (6th Cir.2002). "Under the first and third methods of showing pretext, the fact finder may infer discrimination from the circumstances," while under the second method, the plaintiff may not rely exclusively on its prima facie evidence, "but instead must introduce some further evidence of discrimination." *Id.*

Plaintiff fails to present evidence to show pretext under any of these three prongs. His subjective belief that he "tried his best, with the limited supervisory instruction he had been given" (Docket no. 36 at 12) (Pl.'s Brief) and his disagreement with Comcast's assessment of his job performance do not constitute evidence of pretext. Thus, even if Plaintiff were able to establish a *prima facie* case of age discrimination, which he cannot, he would be unable to meet his burden to show that Comcast's proffered reason for declining to promote him was a pretext for age discrimination.

### C. Retaliation Claim

The ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination. 29 U.S.C. § 623(d). To establish a prima facie case of retaliation, Plaintiff must show that (1) he engaged in a protected activity, (2) the employer was aware that he had engaged in that activity, (3) the employer took an adverse employment action against the

employee, and (4) there is a causal connection between the protected activity and the adverse action. *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 288 (6th Cir. 2012).

Plaintiff believes that Comcast took an adverse employment action against him by intentionally directing calls to him from less affluent areas and for matters related to billing and repair issues at a higher rates than other employees in his position in retaliation for his making an internal complaint of age discrimination. He claims that receiving less desirable or appropriate calls is causing his sales numbers to be lower and, as a consequence, for his commissions to be lower. He does not claim that his rate of pay or method for calculating his commissions has changed. Comcast has provided evidence that an a automated system manages and directs the calls received by Comcast, that calls are directed to agents such as Plaintiff based upon the customer's selection in the automated phone system, which is obviously outside of the company's control, and that Comcast has checked to confirm that his skill set (as a sales person as opposed to, say, a repair person), is set correctly in the automated telephonic system. Plaintiff has no evidence to contradict Comcast's evidence on this matter. His speculation that "[i]t is not out of the realm of possibilities that Dillon himself entered Engel's skills, thereby enabling the routing of billing, care, and repair calls to Engel, knowing full well that occupying his phone time with such misplaced calls would reduce his earning potential, and leave management with the impression that hew as not functioning at capacity" (Pl's brief at 11) is not evidence. Plaintiff has not met his burden of proof that Comcast has taken an adverse employment action against him in retaliation for his internal age discrimination complaint, and thus has not established a *prima facie* case of discrimination.

## IV. CONCLUSION

For the foregoing reasons, the Court will enter judgment for Comcast on each of Plaintiff's claims.

An appropriate order is filed herewith.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE